UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROLYN MILLHOUSE,

    Plaintiff,

v.                              CASE No. 8:08-CV-378-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is flawed at step five of the sequential analysis, it will be reversed and the matter remanded for further proceedings.

I.

The plaintiff, who was forty years old at the time of the administrative hearing and who has the equivalent of a high school

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 10).

education (Tr. 125, 530), has worked as a sandwich maker, line cook, baker, ramp agent, cashier, and filer (Tr. 62, 89, 111, 122). She filed a claim for supplemental security income payments, alleging that she became disabled due to problems with her knees, back, and asthma (Tr. 121). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a *de novo* hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "bulging cervical disc, hydronephrosis, status post surgery on left knee and depression resulting in mild restrictions of activities of daily activities [sic], moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace and no episodes of decompensation" (Tr. 15). She concluded that, due to these impairments, the plaintiff had the following functional capacity (Tr. 24):

> to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit about 6 hours in an 8-hour workday and stand or walk about 2 hours in an 8-hour workday. The claimant can bend, stoop, kneel, crouch, crawl and climb occasionally, with no other postural or environmental limitations. Due to the claimant's

mental impairments, she is limited to performing
work that is unskilled in nature.

The law judge determined that these restrictions prevented the plaintiff from returning to past work (Tr. 28). However, based upon the testimony of a vocational expert, the law judge ruled that there were jobs in the national economy that the plaintiff could perform, such as surveillance system monitor, table worker, and addresser (Tr. 29). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 416.920(c).

When an impairment is severe, but does not meet, or equal, an impairment listed in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 416.920(e). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant

can perform other work which exists in substantial numbers in the national economy. 20 C.F.R. 416.920(f).

III.

The plaintiff challenges the law judge's decision on three grounds. At least one of them warrants reversal. The plaintiff contends, as her third issue, that the law judge's analysis at step five of the sequential evaluation was inherently confusing and, presumably therefore, fatally flawed (Doc. 12, pp. 20-25). In this respect, the plaintiff points out that there is an inconsistency between the law judge's mental residual functional capacity ("RFC") finding and her hypothetical questions to a vocational expert (id., p. 21). There is, furthermore, an inconsistency between the law judge's finding of mental functional limitations at step two and her finding of the plaintiff's RFC.

Starting with the latter error, the law judge at step two found that the plaintiff had a severe impairment of depression that resulted in, among other things, "moderate difficulties maintaining social functioning [and] moderate difficulties maintaining concentration, persistence or pace" (Tr. 15). However, in connection with the determination of the plaintiff's RFC, which is employed at steps four and five, the law judge simply found that, "[d]ue to

the claimant's mental impairments, she is limited to performing work that is unskilled in nature" (Tr. 24). There is clearly a disconnect between these two findings.

The Commissioner points out that the findings of broad functional limitations at step two do not represent the plaintiff's RFC (Doc. 13, pp. 17-19). That does not mean, however, that the findings of functional limitations at step two are simply ignored. Rather, they need to be converted into more precise functional limitations. "The mental RFC assessment at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories" found in the four functional areas used at step two. Social Security Ruling 96-8p, 1996 WL 374184 at *4 (S.S.A.). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. at *6.

In this case, assuming that the law judge properly evaluated the severity of the plaintiff's mental impairment at step two and concluded that she had moderate limitations in concentration, persistence, or pace and in

social functioning, those findings could not reasonably yield a mental RFC of only a restriction to unskilled work. In the first place, that determination of the mental RFC does not comply with Social Security Ruling 96-8p. Simply finding that the plaintiff had a mental limitation of unskilled work clearly does constitute "a more detailed assessment by itemizing various functions contained in the broad categories" of social functioning and concentration, persistence, or pace. Id. at *4.

Furthermore, moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work. "Unskilled work" is defined in the regulations as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. 416.968(a). It is not apparent to me that a person with a moderate limitation in concentration, persistence, or pace could adequately perform all types of unskilled sedentary work. Accordingly, the law judge's contrary conclusion needed a reasonable explanation.

In all events, a restriction to unskilled work plainly does not cover a moderate limitation in social functioning. This circumstance establishes that there is an unacceptable inconsistency between the law

judge's finding of mental limitations at step two and her finding of the plaintiff's mental RFC. And there is no apparent basis for thinking that that error is harmless.

Moreover, the law judge also committed reversible error with respect to the hypothetical questions submitted to the vocational expert. In order for a vocational expert's testimony to constitute substantial evidence, the law judge must pose a hypothetical that includes all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).[2]

The law judge first assumed a person who had the ability to perform a full range of sedentary work (Tr. 572). In her second hypothetical, she assumed an individual with the ability to "perform a full range of sedentary work but will require a simple, routine job with only one or two steps and should not be in frequent contact with the general public" (id.). The vocational expert opined, as to both hypotheticals, that the individual could perform three jobs that existed in the national economy: surveillance system monitor, table worker, and addresser (id.).

---

[2]Although a vocational expert was available at the hearing (Tr. 524), the law judge, inexplicably, did not ask him any questions. Rather, following the hearing, she sent interrogatories to the vocational expert. As a result, plaintiff's counsel was denied the opportunity to question the expert.

Neither hypothetical question is acceptable because neither matches the plaintiff's mental RFC. With respect to the first hypothetical – and it is that question that the Commissioner asserts was the basis for the finding concerning the three jobs that the plaintiff purportedly could perform (see Doc. 13, p. 14) – the assumption was of an individual who could perform the full range of sedentary work. The law judge, however, found that, due to a severe mental impairment, the plaintiff was limited to unskilled work (Tr. 24). The first hypothetical question contained no such limitation (Tr. 572). The hypothetical was therefore deficient because it failed to include the plaintiff's mental impairment.

It is appropriate to add that, even if the hypothetical had included a limitation to unskilled work, it would still be inadequate. As previously explained, a finding of a restriction to unskilled work does not sufficiently encompass the moderate limitations of social functioning and concentration, persistence, or pace.

The second hypothetical question, moreover, cannot support the finding that the plaintiff could perform the three specified jobs, as the Commissioner recognizes (Doc. 13, p. 16). That hypothetical assumed that the individual required "a simple, routine job with only one or two steps and

should not be in frequent contact with the general public" (Tr. 572). The Commissioner acknowledges that the law judge "did not find that Plaintiff had those limitations" (Doc. 13, p. 16). The second hypothetical question therefore does not reflect the law judge's finding of the plaintiff's RFC, so that the answer to that question does not provide relevant evidence of jobs that the plaintiff could perform.

In a footnote, the Commissioner asserts that "the ALJ did not even need to obtain assistance from a VE and could have relied on the Medical-Vocational Guidelines (the Grids) to find Plaintiff was not disabled" (id., p. 15 n. 13) This assertion is unpersuasive because, in the first place, the law judge did rely upon an expert, and not the grids. Judicial review focuses upon the analytical approach that was taken, and not upon one that might have been taken, but was not.

Moreover, the Eleventh Circuit has held, as pertinent here, that "[e]xclusive reliance on the grids is not appropriate ... when a claimant has a non-exertional impairment that significantly limits basic work skills." Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995) (additional quotation marks omitted). The law judge found that the plaintiff has a severe impairment of depression, which means that it significantly affects the

plaintiff's ability to work. See 20 C.F.R. 416.921(a). Consequently, the use of the grids would have been improper. See, e.g., Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989).

In sum, the law judge's analysis at step five was fundamentally flawed. Those flaws warrant reversal.

The plaintiff also contends that the law judge did not consider the medical evidence relating to a pinched nerve in the plaintiff's back in the determination of the plaintiff's RFC (Doc. 12, pp. 12-15). The plaintiff points to an April 2006 MRI showing "bilateral mild facet joint arthropathy at the level of L5-S1. The right facet joint arthropathy [is] causing mild impingement of the right L5 nerve root" (Tr. 328).

The law judge did not refer to this evidence in her decision. Moreover, she determined that "the claimant has asserted that she suffers from a pinched nerve in her back ... however, the record contains no clinical evidence to support that" (Tr. 15).

The Commissioner argues that a mild impingement of the nerve root is not a "pinched nerve" (Doc. 13, p. 5), while the plaintiff suggests that it is (Doc. 12, p. 13). Neither party cites any authority regarding what constitutes a pinched nerve.

Regardless of the name of her impairment, what matters is not the disorder the plaintiff is diagnosed to have, but the functional limitations resulting from the disorder. In this case, there was no elucidation of whether a "mild impingement of the right L5 nerve root" would result in functional limitations greater than those found by the law judge. Accordingly, that issue can be developed further on remand. In particular, the plaintiff would seemingly need to demonstrate that the condition would limit the plaintiff's ability to perform sedentary work.

Finally, the plaintiff makes an argument that the law judge did not properly assess the opinions of Dr. Andrew Kane, a treating physician, and Dr. George N. Maida, who is a consulting psychologist (id., pp. 15-20). Dr. Kane and Dr. Maida essentially opined that the plaintiff would be more limited in performing numerous work-related activities due to her mental impairments than found by the law judge.

The law judge adequately set forth reasons for discounting the opinions of Dr. Maida and Dr. Kane. The law judge appropriately evaluated the records from Dr. Maida, a consulting psychologist, in over two pages of text (Tr. 21-23) and discounted that opinion as follows (Tr. 27):

> Dr. Maida's limitations are based on a one-time evaluation of the claimant, and appear to be based

mainly on the subjective complaints of the claimant; on a day that Dr. Maida notes the claimant has just been informed of the murder of a friend.

This explanation provided good cause for discounting the opinion from Dr. Maida, who is not a treating psychologist. In particular, the law judge could reasonably disregard an evaluation of the plaintiff's mental status that was done on a day she was greatly upset by news of a friend's murder.

With respect to the conclusions of treating physician Dr. Kane, the law judge stated the following reasons for discounting that opinion (Tr. 27):

> While Dr. Kane was the claimant's treating physician, his opinions are not accompanied by thorough, contemporaneous notes, and are not consistent with the objective medical evidence of record, when viewed in its entirety. Partial treatment records from Dr. Kane were submitted by the claimant's representative subsequent to the hearing, for the period from January through December 2006; and these records in no way support the mental limitations assessed by Dr. Kane at Exhibits 10F and 11F. For example, therapy session notes from February 2006 state that the claimant "is doing much better" (Exhibit 12F, pages 4 and 5); on March 4, 2006, treatment notes reported that the claimant had "been doing well on a day-to-day basis. She has been much less depressed, she is sleeping better" (Exhibit 12F,

page 6); on August 15, 2006, "states she has been feeling less stressed" (Exhibit 12, page 13).

Moreover, Dr. Kane is a family practitioner and practices mental health only as a licensed mental health counselor intern at Shands Jacksonville Community Health (Tr. 374). Thus, Dr. Kane's opinion is not entitled to the weight of a specialist. 20 C.F.R. 416.927(d)(5).

The plaintiff contends that a review of Dr. Kane's treatment notes (Tr. 360-73) indicates that his opinions are consistent with the other evidence of record (Doc. 12, p. 19). However, as the plaintiff also points out, Dr. Kane's handwriting is, for the most part, illegible (id.). The law judge was able to decipher some of those notes, which indicated that the plaintiff's condition had improved (Tr. 27).

Notably, the plaintiff concedes that, as of March 2005, when the plaintiff was evaluated by Dr. Eduardo A. Sanchez, a psychiatrist, "most of the claimant's depressive symptomatology appears to have subsided with proper antidepressant therapy" (Doc. 12, p. 17). The plaintiff asserts, however, she was a victim of a sexual assault in 2005 and her condition worsened (id., p. 18). Even disregarding that there are no medical, or police, records showing treatment for, or a reporting of, such an assault, the law judge could appropriately conclude from Dr. Kane's notes that the plaintiff's

mental status had improved by February 2006 with continued improvement that year. Thus, the law judge could reasonably conclude that Dr. Kane's notes support the determination to discount Dr. Kane's opinion.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby **REVERSED**, and the matter is **REMANDED** for further consideration. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 31st day of March, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE